Argued and submitted October 7, 2021, vacated and remanded April 20, petition for review allowed September 16, 2022 (370 Or 214)
See later issue Oregon Reports

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEPHEN ANDREW ARANDA,
*Defendant-Appellant.*

Lane County Circuit Court
19CR07375; A171800

509 P3d 152

Defendant appeals a judgment of conviction for one count of first-degree rape. ORS 163.375. On appeal, he assigns error to the admission of evidence of his prior convictions for first-degree sexual abuse for impeachment purposes under OEC 609(1)(a). Defendant contends that the trial court's refusal to determine whether the probative value of his convictions was substantially outweighed by the danger of unfair prejudice under OEC 403 violated his right to due process under the federal constitution. *Held*: The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires a trial court, if requested by the defense, to balance the probative value of the prior conviction against its prejudicial impact before allowing impeachment by prior conviction under OEC 609(1)(a).

Vacated and remanded.

Charles M. Zennaché, Judge.

David Sherbo-Huggins, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Joanna L. Jenkins, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before James, Presiding Judge, and Lagesen, Chief Judge, and Kamins, Judge.

KAMINS, J.

Vacated and remanded.

**KAMINS, J.**

Defendant appeals a judgment of conviction for one count of first-degree rape. ORS 163.375. On appeal, he assigns error to the admission of evidence of his prior convictions for first-degree sexual abuse for impeachment purposes under OEC 609(1)(a). We reject defendant's remaining assignments of error without discussion. Defendant contends that the trial court's refusal to conduct OEC 403 balancing—the process of determining whether the probative value of his convictions is substantially outweighed by the danger of unfair prejudice—before admitting such evidence violated his right to due process under the federal constitution. We agree with defendant and vacate and remand for further proceedings.

Defendant was charged with rape in the first degree for conduct that occurred during the course of a birthday party. The circumstances surrounding the allegations were contested at trial, with many of the witnesses who attended the party testifying in starkly contradictory ways. Ultimately, defendant took the stand and asserted that the underlying sexual interaction was consensual.

At the trial, the prosecutor sought to impeach defendant's testimony with evidence of his prior convictions pursuant to OEC 609(1)(a). Defendant objected, arguing that his prior convictions for first-degree sexual abuse should be excluded under OEC 403 as unduly prejudicial. Additionally, defendant argued that admitting evidence of his prior convictions through OEC 609 was unconstitutional as applied to him under the Due Process Clause of the Fourteenth Amendment to the United States Constitution if the court did not undertake OEC 403 balancing. The trial court disagreed, reasoning that the evidence was not being offered by the state "without any action by defendant," but rather defendant himself triggered its admission by choosing to testify, and the defense attorney had not identified any case in which OEC 403 balancing was required under the federal constitution in the context of impeachment evidence. The court also reasoned that any prejudice could be adequately addressed by an instruction to the jury limiting their consideration of the evidence to its impact on the

credibility of defendant's testimony. The jury unanimously convicted defendant of first-degree rape.

On appeal, defendant contends that the potential prejudice inherent in the admission of his sexual abuse convictions substantially outweighed any probative value it offered as to his credibility as a witness. As a result, he argues, allowing the prosecution to impeach defendant with his prior convictions without considering the prejudicial effect of those convictions rendered the trial fundamentally unfair in violation of his right to due process under the federal constitution. The state responds that OEC 609 is a "*per se*" rule that is "absolute" in requiring the admission of felony convictions and crimes of dishonesty for purposes of impeachment, regardless of the prejudicial effect of those convictions. Because the use of convictions to impeach a testifying defendant is historically permissible, the state reasons that OEC 609's *per se* requirement does not offend due process.

We review the question of whether the Due Process Clause requires OEC 403 balancing in the context of impeachment under OEC 609(1)(a) for errors of law. *See State v. Williams*, 357 Or 1, 16-17, 346 P3d 455 (2015) (reviewing for legal error whether due process requires OEC 403 balancing in the context of prior bad acts evidence).

OEC 609(1) provides:

"For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record, but only if the crime:

"(a)   Was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted; or

"(b)   Involved false statement or dishonesty."

By its plain terms, "evidence that the witness has been convicted of a crime *shall* be admitted." *Id.* (emphasis added). The limitations on that requirement relate to the type and timing of the conviction: It must have occurred within 15 years, relate to dishonesty, or be punishable by death or

more than a year of imprisonment. *Id.*; OEC 609(3)(a). There is no debate that defendant's prior convictions were punishable by more than a year of imprisonment and the date of conviction was within 15 years, so OEC 609(1)(a) mandates their admission to impeach his testimony. *See State v. Phillips*, 367 Or 594, 612, 482 P3d 52 (2021) (OEC 609 "preempt[s] any balancing of the probative value of the conviction against its prejudicial effect to the defendant" (internal quotation marks omitted)); *State v. Venegas*, 124 Or App 253, 256, 862 P2d 529 (1993), *rev den*, 318 Or 351 (1994) (recognizing that "OEC 609(1) *requires* evidence of a prior felony conviction to be admitted in order to impeach a witness" (emphasis in original)). Under the plain terms of the rule, therefore, the trial court had no choice but to admit defendant's convictions to impeach his testimony. The question is whether that "absolute" requirement contained in OEC 609(1)(a) violates due process.[1]

The Due Process Clause "requires the exclusion of evidence that, if admitted, would render a trial fundamentally unfair." *State v. Baughman*, 361 Or 386, 399, 393 P3d 1132 (2017). Specifically, due process can require empowering a trial court judge to balance evidence's probative value against its prejudicial impact under OEC 403 before admitting it. Although OEC 404, the evidentiary rule relating to bad acts, is silent on whether OEC 403 balancing is allowed or required, the Oregon Supreme Court concluded in *Baughman* that the Due Process Clause "requires the application of OEC 403." *Baughman*, 361 Or at 402 (citing *Williams*, 357 Or at 18). Furthermore, "OEC 403 balancing must be conducted to preclude the admission of concededly relevant evidence that has the capacity to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Id.* at 402-03 (internal quotation marks omitted). Although the admission of prior convictions for impeachment purposes under OEC 609(1)(a) was not at issue in *Baughman*, defendant argues that the same principles apply.

---

[1] Because defendant's sexual abuse convictions do not implicate OEC 609 (1)(b), which pertains to crimes involving false statement or dishonesty, we do not address the interaction, if any, between the Due Process Clause and OEC 609(1)(b).

To determine whether an evidentiary rule—in this case, OEC 609(1)(a)'s *per se* requirement that prior convictions be admitted as impeachment evidence—violates the federal Due Process Clause, we must attempt to determine how the United States Supreme Court would resolve that question. *Williams*, 357 Or at 16 ("Because the United States Supreme Court is the final arbiter of federal constitutional requirements, we must endeavor to determine how that Court would decide the question that the parties present: Whether the Due Process Clause requires the application of OEC 403."). The primary guide for determining whether an evidentiary rule is required by the federal constitution is "historical practice." *Id.* at 17.

Unsurprisingly, defendant and the state present different views of the historical practice in Oregon of admitting prior convictions to impeach a witness without allowing a trial court to conduct OEC 403 balancing. Viewing the history through a wide lens, the state posits that impeachment by conviction initially reflected a historic reform that favored defendants' rights—prior to allowing such impeachment, individuals with prior convictions were disqualified from testifying at all. *See Phillips*, 367 Or at 605 ("The practice of impeaching a witness with evidence of prior convictions traces its origin to the common-law tradition that disqualified any person convicted of an 'infamous' crime—a category that generally included treason, felonies, and crimes of dishonesty and false statement—from testifying as a witness in any case." (Citing Francis Wharton, 1 *A Commentary on the Law of Evidence in Civil Issues* § 397, 350 (3d ed 1888).)). The state contends that impeachment by conviction has been allowed in Oregon for many years, regardless of "the nature" of the conviction. In the state's view, there was only a brief period in the 1980s when the Oregon legislature revised OEC 609(1)(a) to require trial courts to conduct OEC 403 balancing prior to admitting a defendant's past convictions. *See former* OEC 609(1) (1981), *amended by* Or Laws 1987, ch 2, § 9.[2] After those revisions, the vot-

---

[2] *Former* OEC 609(1) (1981) provided:

"For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime in other than a justice's court or a municipal court shall be admitted if elicited from the witness or established

ers weighed in through the passage of Ballot Measure 10 (1986), which removed any ability for trial courts to balance a conviction's prejudicial effect against its probative value. Or Laws 1987, ch 2, § 9; *see also State v. Dick*, 91 Or App 294, 297, 754 P2d 628, *rev den*, 306 Or 528 (1988) ("Ballot Measure 10 amended OEC 609(1)(a) to delete the portion of the sentence which prescribed a weighing of probative value against prejudicial effect."). In the state's view, Ballot Measure 10 restored Oregon to its long-standing practice of mandating the admission of prior convictions for impeachment purposes.

Defendant narrows the focus of the historical practice inquiry from the origins of impeachment by prior conviction to the specific discretion of a trial court to exclude unduly prejudicial prior convictions. With the history so framed, defendant contends that the "only time periods since Oregon became a state during which Oregon courts could *not* exclude this type of evidence if unduly prejudicial" were around six years in the 1970s and following the 1986 passage of Ballot Measure 10. That period in the 1970s occurred after the Oregon Supreme Court interpreted the plain language of the rule as denying any discretion to a trial court to balance convictions admitted for impeachment purposes, although the constitutionality of such a rule was not raised before the court. *Marshall v. Martinson*, 268 Or 46, 51, 518 P2d 1312 (1974).[3] Approximately six years after the decision in *Marshall*, the Oregon legislature revised the rule's language to explicitly grant that discretion to a trial court, a decision that was overturned by the passage of Ballot Measure 10. *See Phillips*, 367 Or at 606-12 (recounting history). Given that history, defendant argues that it is only in the modern era and a brief period in the 1970s that Oregon trial courts have lacked this authority.

---

by public record, but only if the crime (a) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (b) involved false statement."

[3] The question of whether the Due Process Clause requires OEC 403 balancing before admitting prior convictions under OEC 609 was argued before the court on one other occasion, and the court explicitly declined to address that issue. *State v. King*, 307 Or 332, 337-38, 768 P2d 391 (1989)

As defendant's claim arises under the federal constitution, the proper lens is wider than that used by either party. Although Oregon's experience is one source of "historical practice," Oregon's history is not primary in a federal constitutional analysis. *See Washington v. Glucksberg*, 521 US 702, 710, 117 S Ct 2258, 138 L Ed 2d 772 (1997) ("We begin, as we do in all due process cases, by examining our Nation's history, legal traditions, and practices."). Indeed, when deciding that the federal Due Process Clause requires subjecting proffered "other acts" evidence to OEC 403, the Oregon Supreme Court looked to federal and United States Supreme Court jurisprudence. *Williams*, 357 Or at 17-18. When that jurisprudence did not provide a definitive answer, the court revisited "the principles that animate the Due Process Clause." *Id.* at 18.

Thus, we look to the broader historical practice of the role of a testifying witness's prior conviction. A conviction at common law for certain "infamous" crimes, "rendered the convict completely incompetent as a witness." 1 *McCormick on Evidence* § 42 (8th ed 2020). As a result, individuals who had previously been convicted of a serious crime were simply not permitted to testify. *Id.* That "disqualification arose as part of the punishment for the crime, only later being rationalized on the basis that such a person was unworthy of belief." *Green v. Bock Laundry Mach. Co.*, 490 US 504, 511, 109 S Ct 1981, 104 L Ed 2d 557 (1989) (citing 3 J. Weinstein & M. Berger, *Weinstein's Evidence* 609-[02], 609-58 (1988)).

Eventually, that total disqualification was replaced with a rule that allowed such witnesses to testify but face impeachment by evidence of their convictions. *Id.* at 511-12. Just as with the initial prohibition on receiving testimony from a person convicted of a crime, a character-based rationale justified the admission of prior convictions for impeachment purposes: "A person who was willing to break the law would also be willing to lie on the stand." *Phillips*, 367 Or at 606 (citing Wharton, 1 *A Commentary on the Law of Evidence in Civil Issues* § 397 at 350, § 567 at 552). As Justice Holmes articulated more than a century ago:

"[W]hen it is proved that a witness has been convicted of a crime, the only ground for disbelieving him which such

proof affords is the general readiness to do evil which the conviction may be supposed to show. It is from that general disposition alone that the jury is asked to infer a readiness to lie in the particular case, and thence that he has lied in fact. The evidence has no tendency to prove that he was mistaken, but only that he has perjured himself, and it reaches that conclusion solely through the general proposition that he is of bad character and unworthy of credit."

*Gertz v. Fitchburg R. Co.*, 137 Mass 77, 78 (1884).

As courts allowed the admission of convictions for impeachment purposes, a new risk surfaced—namely that "jurors might give more weight to the past convictions as evidence that the accused is the kind of person who would commit the crime charged." 1 *McCormick on Evidence* § 42 (8th ed 2020). The risk that a prior conviction—even when used for impeachment—may have an improperly prejudicial effect is indisputable. *See Green*, 490 US at 511-20 (relating history of efforts of Congress and federal courts to mitigate prejudicial effect of convictions used for impeachment purposes); FRE 609 Commentary (1990) ("[I]n virtually every case in which prior convictions are used to impeach the testifying defendant, the defendant faces a unique risk of prejudice—*i.e.*, the danger that convictions * * * will be misused by a jury as propensity evidence despite their introduction solely for impeachment purposes.").

Indeed, "[t]he law has long recognized that evidence of prior crimes is inherently prejudicial to a defendant in a criminal case." *State v. King*, 75 Wash App 899, 905, 878 P2d 466, 470 (1994), *rev den*, 125 Wash 2d 1021, 890 P2d 463 (1995). That is, "[i]t is difficult for the jury to erase the notion that a person who has once committed a crime is more likely to do so again." *State v. Jones*, 101 Wash 2d 113, 120, 677 P2d 131, 136 (1984), *overruled in part on other grounds by State v. Brown*, 113 Wash 2d 520, 782 P2d 1013 (1989) (recognizing that statistical studies have shown that, even with limiting instructions, a jury is more likely to convict a defendant with a criminal record); *see also Gordon v. United States*, 383 F2d 936, 940 (DC Cir 1967), *cert den*, 390 US 1029 (1968) (recognizing inevitable pressure on lay jurors to believe that "if he did it before he probably did so this time"); Roselle L. Wissler & Michael J. Saks, *On the Inefficacy of Limiting Instructions:*

*When Jurors Use Prior Conviction Evidence to Decide on Guilt*, 9 Law & Hum Behav 37 (1985).

As was the case for the admission of prior bad acts in *Williams*, the historical practice of admitting convictions for impeachment purposes demonstrates that a risk of prejudice exists but does not provide a definitive answer as to whether the Due Process Clause requires a trial court to conduct OEC 403 balancing to determine if the convictions under OEC 609(1)(a) are overly prejudicial. *Williams*, 357 Or at 17. When concluding that prior bad acts must be subject to constitutional balancing, the Oregon Supreme Court had the benefit of federal case law addressing the issue. *Id.* at 10-12. Specifically, federal courts had confronted whether the federal rules of evidence allowing the admission of prior bad acts in sexual assault cases were subject to balancing under the federal counterpart to OEC 403. *See, e.g.*, *United States v. Enjady*, 134 F3d 1427, 1431 (10th Cir), *cert den*, 525 US 887 (1998) (concluding that FRE 413 is subject to FRE 403, and acknowledging that most arguments that FRE 413 is unconstitutional are based on the assumption that FRE 403 does not apply); *see also Johnson v. Elk Lake Sch. Dist.*, 283 F3d 138, 155 n 12 (3d Cir 2002) (recognizing that "a policy of mandatory admission, particularly in the criminal context, has been thought to raise serious constitutional concerns under the Due Process Clause").

However, for purposes of impeachment of a testifying criminal defendant, the federal rule already requires balancing for any crime that does not involve dishonesty. FRE 609(a).[4]

_____

[4] FRE 609(a) provides:

"The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:

"(1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:

"(A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and

"(B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and

"(2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement."

Congress included that requirement due to concerns that the rights of a criminal defendant would be jeopardized by the introduction of prior convictions that could improperly influence a jury. *See* Robert D. Dodson, Esq., *What Went Wrong with Federal Rule of Evidence 609: A Look at How Jurors Really Misuse Prior Conviction Evidence*, 48 Drake L Rev 1, 10 (1999) (observing that "Rule 609 attempted to strike a compromise between the need to admit prior conviction evidence to impeach a witness and the accused's right to a fair trial"). Because the plain text of FRE 609 requires balancing, there does not appear to be useful federal case law addressing whether the Due Process Clause requires OEC 403 balancing.

Oregon appears to be an outlier with its "absolute" prohibition on a trial court's consideration of the prejudicial impact of a prior conviction under OEC 609(1)(a) prior to its admission. Most states have modeled their rule after FRE 609, and either allow or require trial courts to balance the conviction's probative value against its prejudicial effect, often setting forth factors to guide that effort. *See, e.g.*, *State v. Schwab*, 409 NW 2d 876, 878 (Minn Ct App 1987) (citing Minn R Evid 609 which requires balancing and outlining the five additional factors the Minnesota Supreme Court requires trial courts to consider when determining whether to admit evidence of a prior conviction); *Commonwealth v. Kearse*, 473 A2d 577, 579-80 (Pa Super Ct 1984) (explaining that, when determining the admissibility of evidence of prior convictions for impeachment, a trial court must determine whether the probative value outweighs the prejudicial effect); *People v. Castro*, 38 Cal 3d 301, 311-13, 211 Cal Rptr 719, 725, 696 P2d 111, 117-18 (1985) (allowing trial courts to engage in balancing despite voter initiative making prior convictions admissible "without limitation").

Indeed, some state courts have concluded that the admission of prior convictions is so inherently prejudicial and of such limited probative value as to a testifying defendant's credibility that they are only admissible if the testifying defendant opens the door to that conviction. *See, e.g.*, *State v. Johnson*, 21 Kan App 2d 576, 578-79, 907 P2d 144, 146 (1995) (explaining that, unless a defendant introduces evidence solely for the purpose of supporting their

credibility, the admission of prior convictions is improper); *State v. Santiago*, 53 Haw 254, 259-60, 492 P2d 657, 661 (Haw 1971) (because "prior convictions are of little real assistance to the jury in its determination of whether the defendant's testimony as a witness is credible," their probative value is outweighed by the burden imposed on a defendant's right to testify).

As is the situation with federal courts, because most states either allow or require trial courts to engage in OEC 403 balancing before admitting prior convictions for impeachment, not many state courts have addressed whether OEC 403 balancing in this context is a constitutional requirement. The question those courts have addressed appears to be whether the use of convictions for impeachment at all violates due process, with many states concluding that it does not. *See, e.g.*, *State v. Kelley*, 120 NH 14, 18-19, 413 A2d 300, 303-04 (1980) (use of prior convictions for impeachment does not violate due process); *Johnson v. State*, 380 So 2d 1024, 1026 (Fla 1979) (concluding that procedure in the state to allow impeachment by prior conviction without naming the offense does not violate due process); *Lowell v. State*, 574 P2d 1281, 1282-83 (Alaska 1978), *overruled in part on other grounds by Lamb v. Anderson*, 147 P3d 736 (Alaska 2006) (declining to find that impeachment by prior conviction violates due process); *but see Santiago*, 53 Haw at 260-61, 492 P2d at 661 (concluding that to allow the introduction of prior convictions in a criminal case to prove a defendant's testimony is not credible is at odds with the Due Process Clause); *Castro*, 38 Cal 3d 301 at 314, 211 Cal Rptr at 726-27, 696 P2d at 119 (concluding that to permit impeachment by felony convictions which do not involve moral turpitude would violate the Due Process Clause). Therefore, the historical practice in other states does not provide us with a clear answer as to whether the Due Process Clause requires a trial court to engage in OEC 403 balancing before allowing impeachment by prior conviction under OEC 609(1)(a).

Because "historical practice" does not provide a clear answer other than identifying the risk of prejudice, we turn, as *Williams* instructs, to "the principles that animate the Due Process Clause." 357 Or at 18. The first of those principles is that "the admission of evidence that is so

extremely unfair that it violates 'fundamental conceptions of justice' violates the Due Process Clause." *Id.* (quoting *United States v. Lovasco*, 431 US 783, 790, 97 S Ct 2044, 52 L Ed 2d 752 (1977)). Second, unfair prejudice to a criminal defendant occurs when the state presents "some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Id.* (citing *Old Chief v. United States*, 519 US 172, 180, 117 S Ct 644, 136 L Ed 2d 574 (1997)). One specific risk of that occurs when a jury might "'generaliz[e] a defendant's earlier bad act into bad character and tak[e] that as raising the odds that he did the later bad act now charged.'" *Id.* (quoting *Old Chief*, 519 US at 180 (brackets added)). Finally, the "violation of due process that may result from such unfair prejudice is obviated by the application of a rule of evidence that permits a court to consider the risk of prejudice and exclude the evidence when appropriate." *Id.* (citing *Dowling v. United States*, 493 US 342, 352, 110 S Ct 668, 107 L Ed 2d 708 (1990)).

Those principles point in one clear direction. As described above, the risk of prejudice stemming from the introduction of prior convictions is widely recognized. That risk trips precisely the same wire that runs through the Oregon Supreme Court's decisions in *Williams* and *Baughman*. A jury that learns of the defendant's prior conviction may conclude that the defendant has the propensity to commit crimes. Indeed, the original rule prohibiting those convicted of a crime from testifying stemmed from a character-based rationale—that those who would violate the law are unable to comply with an oath. Similarly, the use of convictions for the purpose of impeachment invites the jury to conclude that the defendant cannot be trusted today because they violated the law yesterday. Whatever the probative value of those convictions as to the credibility of a witness, it is not so absolute that the risk of prejudice should not be considered. *See United States v. LeMay*, 260 F3d 1018, 1026 (9th Cir 2001), *cert den*, 534 US 1166 (2002) ("As long as the protections of Rule 403 remain in place to ensure that potentially devastating evidence of little probative value will not reach the jury, the right to a fair trial remains adequately safeguarded.").

This case provides an apt example. Defendant was accused of rape, and in a trial that hinged on credibility, defendant took the stand to tell his side of the story. Because he testified, the jury learned of defendant's prior convictions for sexual abuse. The risk that the jury considered this evidence outside of its limited purpose for credibility was certainly present. To ensure that the jury did not convict defendant based on improper factors, due process required that the trial court, if requested by the defense, determine whether the probative value of the sexual abuse convictions was substantially outweighed by the risk of unfair prejudice. We remand for the trial court to conduct such balancing. *Baughman*, 361 Or at 410.

Vacated and remanded.